Did I pronounce that right? Is it Saekon? Saekon, yes. You pronounced it correctly, Your Honor. Good. All right. Well, once in a while I get it right. My batting average is low today. All right. Mr. Saekon, you have reserved three minutes for rebuttal, so that gives you seven minutes to begin now. You may proceed. Thank you, Your Honor. May it please the Court, I am John Saekon. I'm pro se. I have been arrested nine times and 18 felonies and three misdemeanors. I prevailed on all charges after jury trials. That's a high watermark of not guilty verdicts in Connecticut. I'm seeking redress. The briefs, I am not an attorney. I wrote those briefs myself. I did the best job I can. I can't say that I did a great job, but I ask for condolence. This case presents three principles, issues, and I'll address them briefly, reserving time for my rebuttal. First, statute of limitations. The District Court dismissed virtually all claims as time-barred, relying upon Spaks v. Phillips. But Spaks is no longer good law. It was decided in 2017 without consideration of two controlling Connecticut precedents, Lopes v. Palmer from the Connecticut Supreme Court in 2008 and Washington v. Ivanik from the Appellate Court in 2009. Both held that the statute of limitations for malicious prosecution runs from the dismissal of the criminal charges, not from the entry of the knowledge prosecutory. This is now codified in 2021. The Connecticut Legislature unanimously enacted Public Act 21, 2021-104, creating Section 52-577F of the Connecticut General Statutes, which expressly provides that the limitations period runs from the date of the termination of the criminal proceeding. The legislative history of State — You brought your claims as Federal claims, though, right? I'm sorry? You brought your claims as Federal claims, though, right? Yes, Your Honor. So doesn't Federal law govern the accrual dates? Under Ehlers, State law does. Okay. Well, I think State law determines sort of what is the duration, sort of when the — The statute of limitations. The buzzer goes off, but in terms of when the claim accrues is usually under our precedence. That's a matter of Federal law, and Federal law seems to indicate that a malicious prosecution claim accrues, you know, not with what you're just saying with respect to the State. Well, Your Honor, that — I mean, that's Ehlers. You have to abide by the statute of limitations as defined by the State, and given that the State defined it as in 21 — Right, but we don't have to abide by the State's determination as to when a claim accrues. Okay. I mean, that's the argument of SPACs, but I think you have to follow State law in terms of the accrual dates of the statute of limitations. Okay. There's a Supreme Court case, Wallace v. Cato, that suggests that we look at Federal law on accrual. I would just point that out. Well, Your Honor, and also you — as I note in my brief, you have Thompson case, because what you do is you create a double jeopardy situation if you take that examination to its logical end. And I'll get there in a second, so let me — let me get there to explain. Okay. The legislative history states the purpose was to provide additional time for grief defendants to bring malicious prosecution claims. Under Connecticut practice book section 3931, a nullity does not terminate proceedings. The case can be revived. It's only when it's dismissal 13 months later by statutory automatic dismissal 13 months later does the case end. The Supreme Court's decision in 2022, Thompson v. Clark, confirms this. The prosecution must be disposed of in such a manner that it cannot be revived. The court is bound to apply Connecticut statute of limitations under Lopes, Washington, section 52577F and Thompson as the claims could be timely. Second, count nine, Officer Brander. The district court found probable cause as a matter of law. But just last month in a parallel case, court action involving the same arrest warrant, the Connecticut Superior Court denied summary judgment, finding material issues a fact. This is the case that I did in the front of probable cause. The state court found that the Brander refused to interview me, relied upon a prior larceny arrest that had been dismissed, and failed to account for property expenses. The court held that if the accounting facts had been known, quote, more than a mere diversion of funds would be required to establish a reasonable belief of larceny. As tenants in common, both parties had equal access to accounts. There can be no larceny as a matter of law in the context without evidence of conversion. Right, but I think that I guess the question is why would the officer have known that? We don't typically require an officer to do a separate investigation. So it's only if there was a reason that the officer should have been aware of the unreliability of the complaining witness. Your Honor, if you take that mode of thought, every chief executive officer in the country will be arrested for larceny because you have to make a reasonable inquiry whether you have $115,000 of income. Was there? I mean, I was managing the property. If you have $115,000 of income, what about the expenses of the property? Had the officer made the inquiry, I would have produced tax returns for 2014, 15, and 16 for the property that showed there was no diversion of funds, there was a complete accounting, and, in fact, the property had made a loss. But didn't the officer go to a judicial authority and present his evidence and ask the judicial officer to issue a warrant? Yes, Your Honor, and we're saying that warrant was deficient in many different ways. First of all, that warrant issued a larceny charge that had been settled. This same officer arrested me for a larceny charge for stealing $32,000 from my ex-wife, and she paid me $200,000 in civil court for the injustice. So, therefore, that case had been settled and the case was being dismissed because there was no criminal charge, you know, that the State was dismissing the criminal charge, but he listed it in the arrest warrant application. The second thing he listed in the arrest warrant application was that there was an accounting of $115,000 of funds. That's it. The funds, even in the forensic report, it says the funds have to be accounted for, and even the forensic individual said there's no accounting for expenses. Wasn't the forensic report presented to the judge? The forensic report was presented to the judge, yes, but the point of the matter is the forensic report was very clear. It said there's no accounting for expenses. And so, therefore, and the point of the matter is the person who was making the claim knew, because it was his tax returns that we had in our possession that showed that there was no diversion of funds. And so, therefore, this was malicious prosecution on its face, and he was using the judicial system. In addition, and I don't want to get to it. I'm way over my time. But, in addition, there was a recording, telephone recording, where the alleged victim admitted he brought the criminal charges in order to force a settlement in the civil case. And so, therefore, this was malicious prosecution on its face. The judge in the district court, Connecticut District Court, had access to that telephone conversation. So, therefore, as to the litigation privilege, okay. Third, Connecticut law under Dorfman v. Smith and Adlibby v. Alouinu expressly holds that the litigation privilege does not bar malicious prosecution claims in Connecticut. Attorney Conant allegedly advised his client to pursue criminal charges against me for settlement after a judge had authorized those settlement communications in the family court. Attorney Conant was in family court. He gave a written letter to the victim. The victim presented the letter, and that's how we have the letter of the advice. The district court applied no balancing tests as Connecticut law requires. Those charges were dismissed. The district court's judgment should be reversed and remanded. I reserve the balance of my time for rebuttal. I will also add, I'm sorry, I'm over. I will also add that there were extenuating circumstances why I was delayed in bringing this claim. I would consider collateral estoppel because the claim was delayed by actions of the defendants. And we'll hear from you on rebuttal. Thank you. I guess we're going to hear from all four of you for the opposition. So, all right. First up is going to be Ms. Hoyt for two minutes. Good afternoon, Your Honors. May it please the Court. My name is Ashley Hoyt. I represent the Glastonbury appellees in this matter. So that is John Johnson, F. Perone, Bruce Skehan, Peter Brander, Neal Kavanaugh, Michael Roberts, and the Town of Glastonbury. I just want to make two brief points here, the first being as to Counts 1, 2, 4, and 8. We're arguing to Your Honors that the district court properly dismissed those malicious prosecution claims as they are time barred under the three-year statute of limitations. That's pursuant to this circuit's current decision, it's Back v. Phillips, where it states that a nollie is a termination of the criminal proceedings. Can you respond to his argument that Thompson overruled Back? Yes, Your Honor. So Thompson v. Clark, that was a United States Supreme Court decision. However, it's not on point here because that case was specifically stating that a determination of innocence is not required to constitute a favorable termination for purposes of the accrual date. The person only needs to show that it ended without conviction. And I believe we also briefed that on pages 13 and 14 of our brief as well. So it is our position that as to Counts 1, 2, 4, and 8, Mr. Sacon did not timely file these, and we would ask that the court affirm those counts. As to the second argument that I would like to make as to the malicious prosecution claim in Count 9, we also are arguing that this count was properly dismissed under the federal rule, 12B6 for failure to state a claim as the plaintiff failed to allege facts sufficient within that complaint under the Iqbal standard of pleading to withstand our motion to dismiss. What was the reason the district court denied leave to amend? The way I'm reading it, he said that there had been something filed late? That's correct, Your Honor. How did that implicate the right to amend? Yes, Your Honor. So it's our argument that the district court did not abuse its discretion in not allowing him to replead under federal rule of civil procedure 15A. He had 21 days in which to replead his complaint. Our motion to dismiss was granted on March 28, 2024, and he did not file that amended complaint until June 3, 2024. So I believe that the court uses discretion in saying that, you know, there wasn't enough excuse me, there was too much time elapsed in between without asking opposing counsel for consent or asking for leave of court. And if there were no further questions from Your Honors, I'll rest on my briefs. All right. Thank you. Thank you. And that will conclude Mr. Tripico. Am I pronouncing that right? Tripico, Your Honor. It's been a long time. May it please the Court, Michael Tripico, four appellee defendants, Freed, Barcroft, LLC, and attorney Seth Conant. Just in the interest of time, all counsel are in essential agreement as to the district court's dismissal of Mr. Saccon's complaint on statute of limitations grounds. All the arguments are congruent with one another. And although I think that there are some differences in the time calculations, they all fall behind the date that he was required to bring them in. So I'll just make a few points applicable to my client. Beyond the statute of limitations argument, the district court held that the litigation privilege barred all of the claims that he brought except for the malicious prosecution claim. But before we get even to that, for the purposes of this appeal, I argue that Mr. Saccon waived his right to challenge that determination because it was never briefed in his moving papers. It was only touched upon in his reply. And in his reply, he only really addresses it with respect to the malicious prosecution claim. But, again, the underlying district court decision didn't decide it on that basis, and we're not disagreeing with that. The district court decided that the malicious prosecution claim, as to my clients, was subject to dismissal because it was not plausibly pleaded. The reason it wasn't plausibly pleaded was because it failed to meet the first element of a malicious prosecution claim, i.e., that the defendant initiate the prosecution. Here we just have simply a suggestion by an attorney to his own client that they seek criminal relief. Nothing beyond that. So that falls far short, in my view, as the district court found, of establishing a malicious prosecution claim. In closing, and I'll turn it over to my brother, Counsel, there's a number of other bases in the briefing and the underlying district court level that were not actually addressed by the court, but are also independent bases for affirming the district court's decision, which are laid out in my brief. And unless the Court has any questions, I'll turn it over to Counsel. All right. Okay. Thank you. Next, we have Mr. Rowley. Yes, Your Honor. Good afternoon, and may it please the Court. I'm Assistant Attorney General Ed Rowley, and I represent Connecticut State Trooper Ferreira. Unless the Court has any questions specific for Trooper Ferreira, I would rely on my co-counsel's arguments on the statute of limitations issues and rest on the arguments set forth in our brief and ask that this Court affirm. Thank you. All right. Thank you, Mr. Rowley. And finally, Mr. Glass. Good afternoon, Your Honors. May it please the Court. I will also rely on the arguments made by brother and sister counsel, unless there's any specific questions with respect to my client, the Manchester defendants. In addition, I'll also point out in our brief, we raised the issue that a number of claims directed at the Manchester defendants were waived as they were not addressed. The only claims that were addressed with any substance were the malicious prosecution claims and for the reasons set forth by brother and sister counsel, we would ask that the underlying decision be affirmed as the statute of limitations was properly calculated and applied as to those claims. All right. Thank you. Thank you. And then we'll hear from Mr. Sacon for two minutes of rebuttal. Yes, Your Honor. Your Honor, when you decided SPACs, you never considered Lopes v. Washington. This was likely a Westlaw indexing error because when we researched it and when everybody researched it, guess what? It didn't come up. It took a pro se at a law library, just rooting around to find them. Go to Westlaw. Maybe they corrected the error. I don't think they did. The Connecticut legislature's subsequent codification of Section 52577F confirms SPACs was wrong. That was done in response to SPACs. Now, what I tried, I said a motion for certification in the question of state law, I filed it in district court, okay, and said why don't you refer that question to the Connecticut state legislature because there is no site precedent, the 2021 legislation has not yet been subjected to any decision of the court. And I thought that was the appropriate way to handle this matter. The appellees argue probable causes to count nine. In November 7th, a state court decision, same warrant, same facts, finding genuine issues of material fact. Officer Brander admitted he chose not to interview me. He ignored that the property was in receivership. He ignored that the receiver had $64,826 cash on hand. He relied on a forensic report that accounted for zero operating expenses. You can arrest any manager in the state of Connecticut on that premise, okay? Litigation privilege. The privilege simply does not apply to malicious prosecution under Connecticut law, and that was the appellate Connecticut court reversed it back. The appellees argue bankruptcy or COVID tolling is inapplicable. Under Connecticut, under 11 U.S.C. 108A, the trustee and then the debtor stepping into the trustee's shoes had two years from the order of relief. This case was delayed on several cases, which you need to be aware of. Mr. Roberts, a sworn officer, when I said to the appellate court of the state of Connecticut on May 17th, 2018, that the town of Glastonbury's police department were corrupt and I know where the bodies were buried and I asked for a grand jury investigation as to a murder, 11 days later I was coincidentally run over by a truck while I was riding my bicycle in town by a sworn officer of the town of Glastonbury. That's Mr. Roberts. Mr. Cavanaugh then turned around and arrested me for striking that truck with my body. That's how... Okay, last thing. Thank you for the overtime. The Fifth Amendment concern with SPACs. If the statute runs from the NOLI, a plaintiff must file suit while criminal charges can still be revived, forcing me to risk self-incrimination and giving prosecutors a road map to refile. This is constitutionally untenable. This is what they did in this particular case. I was forced to file bankruptcy because of the felony charges. Town of Glastonbury converted the case to Chapter 7 bankruptcy, taking this case from me and giving it to the trustee, who did not prosecute the case. By the time I got it back from the trustee, I had a very limited amount of time in order to bring the case. That's called collateral estoppel. You can't do that. You can't rob from me the time to bring the case by legal maneuvers. And I... I'm sorry if I'm passionate about this case, but, I mean, I lost everything. I will be permanently disabled from that auto accident. I have osteochronosis of my bones. I will become in a wheelchair in five years from that auto accident when they ran me over the truck. That's Roberts. That's Defendant Roberts. Okay? I had a $13 million estate when this started. You cannot refinance your business when you have felony charges hanging over your heads. That forced me into bankruptcy. And then they converted my bankruptcy to Chapter 7. I am now indigent. That's the result of facing 152 years in prison. I spent four months in a Supermax prison for giving my son a $100 bill to buy a pair of sneakers. It's no lie. I gave him a $100 bill. I went to prison for it. I was on two years of house arrest, which means I could not bring cases. I could not consult attorneys because I was on house arrest while the charges were pending. All right. Well, I mean, the issues before us are largely legal ones, but that will be the focus, obviously, of our ruling. But we're going to reserve decision.